ROUSSEAU *v.* ED WHITE JUNIOR SHOE COMPANY.

5-110                                        258 S. W. 2d 240

Opinion delivered June 1, 1953.

*Ward, Coleman & Mayes,* for appellant.

*Gerald Brown* and *Kirsch & Cathey,* for appellee.

GEORGE ROSE SMITH, J. This is an action by the appellant to recover back wages and a penalty under our statute requiring a corporate employer to pay a discharged employee his wages within seven days after the discharge. Ark. Stats. 1947, § 81-308. There was a verdict for the plaintiff for $9.38 as back wages, but the court had instructed the jury that no penalty could be recovered. Whether the latter charge was correct is the only question now presented.

Before this controversy arose Mrs. Rousseau had worked for the appellee off and on for several years, having quit her job on three or four occasions and having been later re-employed in each instance. It has been the appellee's practice to pay its employees on every other Friday for a work period of two weeks, but in order to allow time for bookkeeping entries the company does not actually make payment until the Friday next succeeding that on which a particular work period ends.

On Friday, March 21, 1952, Mrs. Rousseau completed a two-week work period, for which she would ordinarily have been paid on the next Friday, March 28. In this interim Mrs. Rousseau worked an eight-and-a-half-hour day on Monday, March 24, and came to work as usual on Tuesday. At about noon she learned of the death of her grandfather, and with the company's per-

mission she went home and stayed away from her workbench until an officer of the company telephoned her on the morning of Friday, March 28, and demanded that she return to work by one o'clock that afternoon. Mrs. Rousseau did not comply with this demand, and the jury would have been warranted in finding that she was discharged for that reason.

In the midafternoon of that same Friday Mrs. Rousseau and her husband went to the company's office to collect her wages. Mrs. Rousseau accepted a check for the period that had ended on Friday, March 21, but she was informed that her wages for the preceding Monday and half of Tuesday would not be paid until the next regular payday, two weeks later. After some argument about this point Mrs. Rousseau and her husband left the office. There is not one word of testimony indicating that Mrs. Rousseau then gave the company a mailing address to which her check should be sent. Two weeks later, according to its practice, the company mailed Mrs. Rousseau a check for nine dollars (less thirteen cents deducted for social security), but this tender was rejected and the present suit was filed. In the course of its pleadings the defendant admitted liability for $9.38 (the amount of the jury's verdict) and offered to confess judgment to that extent.

On this proof the trial court rightly held that the statutory penalty was not recoverable. This statute allows the employer a grace period of seven days in which to pay the discharged employee his wages. We have held again and again that even when this period elapses without the wages having been paid it is still incumbent upon the employee, in order to collect the penalty, to show either (a) that during the seven days of grace he requested the employer to send the payment to a specified mailing address, or (b) that not having made such a request he renewed his demand for payment after the expiration of the seven-day period. *Wisconsin & Ark. Lbr. Co.* v. *Reaves,* 82 Ark. 377, 102 S. W. 206; *St. Louis, I. M. & S. Ry. Co.* v. *McClerkin,* 88 Ark. 277, 114 S. W. 240; *Lusk* v. *Jones,* 128 Ark. 312, 194 S. W. 250.

In her brief Mrs. Rousseau earnestly contends that it was for the jury to say whether she complied with requirement (a) by instructing the appellee to mail her check to a specified address. There is, however, no direct evidence whatsoever to that effect. Mrs. Rousseau testified at length, but she did not so much as hint that she had supplied the appellee with the mailing address that the statute requires. Nor did any other witness intimate that this requirement had been met.

In spite of this deficiency in the proof it is argued that the jury might have inferred that the statutory requirement was met, for the reason that the appellee had Mrs. Rousseau's address in its files and eventually mailed her check to that address. If the statute were to be liberally construed it might be permissible to indulge in such speculations. But this law is penal in the extreme; here the appellant asks a penalty of $354 for the appellee's delay in making a payment of $9.38. When the penalty is so obviously disproportionate to the actual injury it has always been the policy of the law to hold the plaintiff to a strict compliance with the statutory conditions. With reference to this exact statute we said in the *McClerkin* case, *supra*: "Nothing can be taken by intendment to show compliance with statutes of this kind." And in the *Lusk* case we answered a similar argument with these sentences: "But appellee further insists that because his foreman or timekeeper knew that he had been receiving his pay check at the Jonesboro station it was unnecessary for him to give the notice required by the statute. The court adheres to its former construction that in order for an employee of a railroad to avail himself of the penalty, he must comply strictly with the statute." To these settled rules of law we need now add only the observation that, since every employer is likely to have somewhere in his files the address of each of his employees, the statutory requirement that the employee pointedly notify the employer of a mailing address would be completely nulli-

fied if the employer's prior knowledge were taken "by intendment" as a compliance with the law.

Affirmed.